**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL SURLES,<br><br>    Plaintiff,<br><br>  v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, ARTHUR J. GALLAGHER & COMPANY, THE COMMISSIONER OF THE CALIFORNIA DEPARTMENT OF INSURANCE, and DOES 1–50, inclusive,<br><br>    Defendants. | No. C 06-05807 WHA<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION TO REMAND; (2) GRANTING DEFENDANT'S MOTION TO APPLY ILLINOIS LAW; AND (3) GRANTING DEFENDANT'S MOTION TO DISMISS** |

**INTRODUCTION**

In this action for wrongful termination of disability insurance benefits, plaintiff moves to remand this action to California Superior Court. Defendant The Prudential Insurance Company of America moves to apply Illinois law and to dismiss plaintiff's claims for bad faith, misrepresentation, and intentional infliction of emotional distress pursuant to FRCP 12(b)(6). Defendant has shown that the Commissioner of the California Department of Insurance was misjoined in this action. Plaintiff's motion for remand is denied because complete diversity of parties exists. Defendant has also shown that Illinois law should apply to this action and that plaintiff's claims for bad faith, misrepresentation, and intentional infliction of emotional distress are governed by Illinois law. Plaintiff's motion for remand is **DENIED**. Defendant's motion to apply Illinois law is **GRANTED**, and defendant's motion to dismiss is **GRANTED**.

**STATEMENT**

Plaintiff Carol Surles became the president of Eastern Illinois University in March 1999 (Compl. ¶ 7). As part of her benefits package, she was eligible for a group long-term disability plan issued by Fortis Benefits Insurance Company (*ibid.*). In 2000, the university decided to change insurance carriers to a plan issued by defendant Prudential (*id.* at ¶ 12). In making its decision, the university allegedly relied on representations from Prudential and its insurance broker, defendant Arthur J. Gallagher & Company, that Prudential's plan would duplicate the benefits provided by Fortis (*ibid.*). The Prudential plan allegedly differed in some respects, particularly in its definition of disability (*id.* at ¶ 12). It also stated that the plan was governed by the law of Illinois (Ewing Decl. Exh. A). Only Prudential officers had the authority to change the terms of the plan (*ibid.*). The plan stated explicitly that a Prudential agent was not an officer (*ibid.*).

Plaintiff was injured in a serious automobile accident in July 2000 (*id.* at ¶ 15). She was diagnosed with breast cancer two months later and underwent a double mastectomy (*id.* at ¶ 16). She has been diagnosed with a number of other conditions (*id.* at ¶ 18). Surles filed a claim for disability benefits in April 2001 (Cowan Decl. Exh. 1). She received disability payments from the Illinois State Retirement System from October 29, 2001, through June 6, 2003, and she also received a minimum payment of $100 per month from Prudential (Compl. ¶ 21). Surles received a letter from Prudential on Prudential letterhead dated December 31, 2001, approving her application for benefits (Hannan Decl. Exh. 2). The letter referred to two different policy numbers, group policy #93024 and group policy #92821 (*ibid.*). It also described the Prudential plan's definition of disability. Plaintiff now argues in her briefs that she merely believed that Prudential was administering the plan for Fortis and that she had never received notice that the plan or her coverage had changed.

Prudential began paying Surles the maximum benefit of $7500 per month on June 6, 2003 (Compl. ¶ 23). On October 27, 2005, Prudential sent Surles a letter informing her that her benefits were terminated because she was not disabled (Cowan Decl. Exh. B). Prudential's

decision was based on its determination that Surles could perform a sedentary occupation, so she could fulfill her former duties as a university president (Compl. ¶ 24).

Until late in 2001, Surles resided in Illinois. At that time, she moved to Florida. All communications related to Prudential's terminating her benefits were sent to her address in Florida. She took up residence in California in the summer of 2006.

Surles filed this action in California Superior Court on August 24, 2006, alleging breach of contract, breach of covenant of good faith and fair dealing, intentional and negligent misrepresentation, intentional infliction of emotional distress. Her sixth and final claim asked for a writ of mandamus ordering "the COMMISSIONER[sic] [to] exercise his discretion and take such action as he may decide is reasonably necessary to respond to the alleged fraudulent and unlawful conduct of Defendants" (Compl. ¶ 8). Prudential timely filed for removal on September 21, 2006, with Gallagher filing a notice of joinder the next day.

**ANALYSIS**

**1.  SURLES' MOTION TO REMAND.**

Plaintiff argues that this action was improperly removed from state court under 28 U.S.C. 1441(b) because there is not complete diversity of parties. Surles is now a California resident. Of the defendants, Prudential is a resident of New Jersey, and Gallagher is a resident of Illinois, but the commissioner is a resident of California. Prudential, however, contends that the commissioner was fraudulently joined in this action.

Plaintiff argues that Prudential's notice of removal was procedurally defective because the commissioner did not join the notice of removal. This rule does not apply to fraudulently-joined parties. *Emrich v. Touche Ross Co.*, 846 F.2d 1190, n.5 (9th Cir. 1988). Fraudulent joinder is precisely what Prudential must argue. If it is successful, then there is no procedural defect.

Fraudulent joinder exists if the plaintiff fails to state a claim against a resident defendant, and the failure is obvious according to the settled rules of the state. *Morris v. Princess Cruises*, *Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). The removing party bears the burden of establishing fraudulent joinder. *McCabe v. General Foods Corp.*, 811 F. 3d 1336,

1339 (9th Cir. 1987). Defendant has the burden of establishing that removal is proper and doubts as to removability are resolved in favor of remand. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

Plaintiff's sixth claim asks for a writ of mandamus to compel the commissioner to exercise his discretion and decide whether or not to pursue administrative enforcement against Prudential. It is the only claim that names the commissioner as a defendant. Prudential argues that Surles is not entitled to a writ of mandamus as a matter of law.

California Code of Civil Procedure Section 1085 governs the issuance of a writ of mandamus. It states in pertinent part:

> A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such inferior tribunal, corporation, board, or person.

A writ of mandamus cannot be used to compel an agency to use its discretion in a particular way, but it can, however, be used to compel an agency to exercise its discretion. *Armando D. v. State Dept. of Health Serv.*, 124 Cal. App. 4th 13, 21 (2004). "[T]wo basic requirements are essential to the issuance of the writ: (1) a clear, present, and usually ministerial duty upon the part of the respondent; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty." *Id*. at 23 (citations omitted).

Plaintiff argues that the commissioner owes her a duty under California insurance law to investigate Prudential's practices. Specifically, the commissioner has a duty under California Insurance Code Section 10291.5(a)(1) to prevent unfair and fraudulent trade practices in disability insurance. Plaintiff misquotes the statute. Section 10291.5(a)(1) actually states the *purposes* of that section, not the comissioner's duties under it. Section 10291.5(b)(1) states that the commissioner has a duty not to *approve* insurance policies issued in California that have unfair, fraudulent, or misleading terms.

"[I]f an insured party believes the commissioner has abused his or her discretion in approving a policy in violation of [Section] 10291.5, the insured may petition for a writ of

4

mandamus requiring the commissioner to revoke the approval." *Van Ness v. Blue Cross of California*, 87 Cal. App. 4th 364, 371–372 (2001). A number of decisions from this district have held that the commissioner was properly joined as a party where the plaintiff asked for a writ of mandamus ordering the commissioner to exercise his discretion to revoke approval of an insurance policy with unfair, fraudulent, or misleading terms. *See, e.g.*, *Brazina v. Paul Revere Life Ins. Co.*, 271 F. Supp.2d 1163, 1167 (N.D. Cal. 2003); *Sullivan v. Unum Life Ins. Co.*, 2004 WL 828561, *3 (N.D. Cal. 2004); *Glick v. UnumProvident Corp.*, No. C 03-4025 WHA (N.D. Cal. 2004). In those decisions, the commissioner had a duty to the plaintiff because the commissioner had approved the insurance policy when it was issued.

Plaintiff makes no such showing or allegation that the commissioner ever approved the Prudential policy. She does not ask in her complaint that the commissioner exercise his discretion to withdraw approval. At the hearing on this motion, plaintiff's counsel admitted that the commissioner had never approved plaintiff's insurance policy. It was issued in Illinois, was governed by Illinois law, and was purchased by an Illinois state university. Because of this, the commissioner does not have a duty to exercise his discretion to withdraw his approval, and he does not owe a duty to plaintiff under Section 10291.5(b)(1).

Next, she argues that the commissioner owes her a duty under Section 790.03, which defines a considerable number of unfair and deceptive insurance practices. On its face, this section only defines the practices the commissioner has a duty to prevent, not what he must do to prevent them. Plaintiff also argues that under Section 12926, the commissioner "shall require from every insurer a full compliance with all provisions of the code." This is true, but it does not create a duty to plaintiff.

Essentially, the commissioner has the duty to approve policies, respond to complaints, initiate administrative proceedings based on those complaints, conduct market studies, and initiate cease-and-desist proceedings. As mentioned above, plaintiff cannot argue the commissioner was required to approve her policy. A market study or a cease-and-desist proceeding would help her little. Furthermore, both parties agree that the commissioner cannot

5

adjudicate disputes between insurers and their customers. Cal. Ins. Code Sections 12921.3, 12921.4. The commissioner's only duty left that could give Surles a remedy or benefit is the complaint process.

Both parties spill considerable ink over whether plaintiff has exhausted her administrative remedies with the commissioner before seeking a writ of mandamus. Specifically, Prudential argues that Surles must have filed a complaint with the commissioner before mandamus would lie. "[W]here an administrative remedy is provided by statute, relief must first be sought from the administrative body and its remedies exhausted before the courts will act to review the action of that agency." *Temescal Water Co. v. Dep't. Pub. Works*, 44 Cal. 2d 90, 106 (1955). Plaintiff argues correctly that this is not an instance where administrative remedies must be exhausted because *Temescal* relied on the fact the agency had an adjudicatory function in administrative hearing. Here there is no adjudicatory function because the commissioner cannot adjudicate disputes.

Plaintiff, however, cannot show that the commissioner owes plaintiff a duty. Surles never made any sort of complaint or had any contact with the commissioner or the department of insurance. Essentially, plaintiff is arguing that as soon as she crossed the California state line, she had a right to compel the commissioner to exercise his discretion over an insurance contract of which Surles did not nothing to make the commissioner aware. The commissioner has a duty to investigate and respond to the public's complaints regarding insurance but his duty does not include clairvoyance. It is absurd to think that the commissioner would have known about plaintiff's complaints regarding a disability insurance plan that was based in Illinois, administered in Illinois, and claims that were filed in Illinois. All communications regarding the denial of plaintiff's benefits prior to the filing of this action were conducted outside California. Plaintiff cannot identify a beneficial right in receiving a writ of mandamus. Thus, the commissioner was improperly joined in this action, and plaintiff's motion to remand is **DENIED**. Surles' claim against the commissioner must be **DISMISSED.**

6

Finally, plaintiff's counsel admitted at the hearing that he could point to no case or authority that would support his argument that his client was entitled to a writ of mandamus. Under Rule 11(b)(2), counsel may be sanctioned for presenting arguments that are not warranted by law or not made with a reasonable argument for modification or extension of existing law. Essentially, plaintiff knowingly made a frivolous legal argument to avoid removal. He even admitted at the hearing that what he was asking the court to find was without precedent and presented no legal support in its favor. Subject to complying with the attached order, defendant Prudential's counsel is granted attorney's fees for opposing plaintiff's motion to remand only.

### 2. PRUDENTIAL'S MOTION TO APPLY ILLINOIS LAW.

Prudential moves to apply Illinois law to this action. When a federal district court is sitting in a diversity action, it must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Manufacturing Co., Inc.*, 313 U.S. 487, 496 (1941). California courts apply a governmental interest approach. *ABF Capital Corp. v. Grove Properties*, 126 Cal. App. 4th 204, 215 (2005). When there is a valid, bargained-for choice-of-law provision in a contract, California courts apply the approach outlined in the Restatement Second of Conflict of Laws Section 187. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464–65 (1992).

Section 187 provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of Section 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

In short, a district court must first analyze whether the chosen state has a substantial relationship to the parties or their transaction. If the first prong is met, a court must then determine whether the chosen state's law is contrary to a fundamental policy of California. If so, then the court

must weigh whether California has a materially greater interest than the chosen state in the determination of a particular issue. *Nedlloyd,* 3 Cal. App. 4th at 365.

Plaintiff concedes that Illinois has a substantial relationship to the parties and the transaction. Surles was employed in Illinois when she began being covered by the Prudential policy, she suffered injuries that made her allegedly disabled while she was in Illinois, she made her claim for benefits in Illinois, and the university purchased the insurance in Illinois.

### A.      **Fundamental Policies.**

Next, it must be determined whether Illinois state law is contrary to a fundamental policy of California. Plaintiff contends that fundamental policies include laws that make certain kinds of contracts illegal, or where the law is designed to prevent the use of oppressive bargaining power, and identifies the right of an individual against an insurance company as an example. Restatement (Second) of Conflict of Laws Section 187, cmt. g. Plaintiff, however, has not shown how Illinois has contravened this fundamental interest.

Plaintiff and defendant agree that there are material differences in California law and Illinois law with respect to insurers. Section 155 of Illinois insurance law bars common-law claims for an insurer's vexatious and unreasonable conduct. Extracontractual damages are limited to 60% of compensatory damages or a maximum of $60,000. 215 Ill. Comp. Stat. 5/155. California, on the other hand, allows plaintiffs to allege common-law claims for fraud, bad faith, and intentional infliction of emotional distress. Attorney's fees are available as remedies, and there is no cap on damages. Plaintiff also argues that California law establishes a "standard of care" for insurers. Cal. Ins. Code Section 790.03.

Plaintiff argues that these differences in the law necessarily mean that insureds have less protection under Illinois law than California law. Although Illinois law does bar some common-law claims, it still allows those rights to be vindicated under statute. It would appear that the only real differences in the two states' laws is in the damages plaintiff can recover. Insureds have similar rights to sue insurers under both states' laws, so Illinois law does not contravene a significant interest of California insurance law.

Plaintiff relies on two California decisions where California courts held that choice-of-law provisions did not apply. *America OnLine, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 15 (2001); *Ozgur Aral v. Earthlink, Inc.*, 134 Cal. App. 4th 544, 564 (2005). Both decisions hinged on the fact that the law of the chosen state did not allow consumer class actions on those particular facts, while California law did. Had the choice-of-law provision been enforced, individual plaintiffs would have been forced to litigate in a distant forum for a small amount of damages. Plaintiffs would have been effectively foreclosed from getting remedies because they could not pursue their claims as a class action. In those situations a California policy, consumer protection, was contravened by a choice-of-law clause. Here, plaintiff cannot argue that she effectively has no remedy under Illinois law. She admits that it has a law in place by which she can pursue remedies, but they may not be quite so large as they might be California. Accordingly, no significant interest of the state of California is impaired by the application of Illinois law in this instance.

### B. Materially Greater Interest.

Plaintiff argues that California has a materially greater interest in this dispute because she is a California resident. In response, defendant argues that Illinois has a greater interest in resolving this conflict. Plaintiff resided in Illinois while she allegedly became disabled, while she filed her claim. The university took out the policy in Illinois to benefit its employees. The alleged misrepresentations to the university occurred in Illinois. The only conduct that occurred in California was the filing of this complaint. Plaintiff argues that her benefits were terminated while she resided in Florida, but it is difficult to see how this shows that *California* has a materially greater interest than Illinois. Prudential's motion to apply Illinois law is **GRANTED**.

### 3. PRUDENTIAL'S MOTION TO DISMISS.

Prudential finally moves to dismiss plaintiff's claims for bad faith, misrepresentation, and intentional infliction of emotional distress under FRCP 12(b)(6).

A motion to dismiss under FRCP 12(b)(6) tests for legal sufficiency of the claims alleged in the complaint. A complaint should not be dismissed "unless it appears beyond doubt that the

9

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "All allegations and reasonable inferences are taken as true, and the allegations are construed in the light most favorable to the non-moving party, but conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.F 2004).

Prudential argues that because Illinois law applies, plaintiff's claims are barred by Illinois Insurance Code Section 155. Claims for fraud, bad faith, and intentional infliction of emotional distress are barred by Section 155. *Perfection Carpet v. State Farm Fire & Casualty Co.*, 259 Ill. App. 3d 21, 25 (1994) (fraud claims are barred); *Bageanis v. American Bankers Life Assurance Co.*, 783 F.Supp. 1141, 1147 (N.D. Ill. 1992) (bad faith and intentional infliction of emotional distress claims are barred). Thus, under Illinois law, plaintiff cannot plead claims for fraud, bad faith, and intentional infliction of emotional distress. Prudential's motion to dismiss is **GRANTED**.

In her opposition, plaintiff asked for leave to amend her complaint if defendant's motion is granted. Particularly, she wants to allege claims under Illinois state law. As a case management conference did not occur in this case until January 18, 2007, the deadline for amending pleadings has not yet passed. Plaintiff will be granted leave to amend her complaint.

## CONCLUSION

For all the above-stated reasons, plaintiff's motion to remand is **DENIED**. Defendant's motions to apply Illinois law and to dismiss for failure to state a claim are **GRANTED**. Plaintiff will be granted leave to amend her complaint.

**IT IS SO ORDERED.**

Dated: January 19, 2007

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10